UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :     <u>SUPERSEDING INDICTMENT</u>

          - v. -                  :     S1 11 Cr. 297 (RPP)

CHRISTOPHER CAVOUNIS,             :
JAGDESH COOMA, and
THOMAS NUCCIO,                    :

          Defendants.            :

- - - - - - - - - - - - - - - - - -x

<u>COUNT ONE</u>
(Conspiracy To Commit Bank Fraud)

The Grand Jury charges:

<u>THE DEFENDANTS</u>

1.   At all times relevant to this Indictment,
CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the
defendants, prepared and submitted, and caused to be prepared and
submitted, false and fraudulent information and documents to
financial institutions in furtherance of a scheme to obtain
commercial bank loans through fraud, and did so as part of a
continuing financial crimes enterprise organized, managed, and
supervised by CAVOUNIS.

2.   Through their fraudulent conduct, CHRISTOPHER
CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, and
others known and unknown, realized at least approximately
$10,000,000 in fraudulently obtained loan proceeds.

## THE RELEVANT FINANCIAL INSTITUTIONS

3.    At all times relevant to this Indictment, Capital One Bank (USA), N.A., ("Capital One"), Citibank, N.A. ("Citibank"), First Republic Bank ("First Republic"), Herald National Bank ("Herald National"), New York Commercial Bank ("New York Commercial"), Signature Bank ("Signature"), Sovereign Bank ("Sovereign"), and TD Bank, N.A. ("TD Bank") were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation.

## THE SCHEME TO DEFRAUD

4.    From at least in or about 2009 up to and including in or about November 2010, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, acting in concert with each other and with at least three other co-conspirators, and others known and unknown, fraudulently obtained, and assisted others in fraudulently obtaining, numerous commercial loans from banks (the "lenders").  Specifically, through their scheme, which CAVOUNIS organized, managed, and supervised, CAVOUNIS, COOMA, NUCCIO and others obtained or attempted to obtain at least 16 commercial loans and/or lines of credit under false and fraudulent pretenses from Capital One, Citibank, First Republic, Herald National, New York Commercial, Signature, Sovereign and TD Bank, among other lenders.  The amount of these loans totaled at least approximately $10,000,000, of which CAVOUNIS received more than

2

approximately $5,000,000, from in or about 2009 up to and
including in or about November 2010. All of these loans are now
in default.

     5.   In furtherance of the scheme to defraud, from at
least in or about 2009 up to and including in or about November
2010, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the
defendants, and others known and unknown, prepared and submitted,
and caused the preparation and submission of, applications and
supporting documentation for commercial loans from the lenders.
These applications and documents contained false and misleading
information in order to induce the lenders to make loans that the
lenders otherwise would not have funded.

     6.   As a part of the scheme to defraud, CHRISTOPHER
CAVOUNIS, the defendant, fraudulently posed as another individual
in applying for lines of credit from several different lenders,
and provided to lenders falsified identification documents
manufactured by JAGDESH COOMA, the defendant, in support of the
loan applications. CAVOUNIS used these documents and other false
information to deceive the lenders into believing that an
individual other than CAVOUNIS controlled the companies that had
applied for the loans. These companies, and the others that
purportedly applied for commercial loans at CAVOUNIS's direction,
were empty shell companies that had no existing or legitimate
business and no assets.

7.   As a further part of the scheme to defraud, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, and others known and unknown, prepared loan applications and supporting documentation, such as falsified tax returns, financial statements and bank statements for the empty shell companies that were purportedly seeking loans.  These loan applications and supporting documentation purported to accurately represent the financial information of each company that applied for the loans from the lenders.  However, the loan applications and related information fraudulently portrayed the empty shell companies as going concerns with significant streams of revenues. These submissions to the lenders were false and misleading because, among other things, (a) the companies applying for the loans had no existing or legitimate business and, consequently, had no actual earnings or income, and (b) the companies did not maintain the bank accounts reflected in the bank statements provided to the lenders as part of the loan applications.  In truth and in fact, CAVOUNIS, COOMA, and NUCCIO, and others known and unknown, created and supplied falsified tax returns, financial statements and bank statements in order to induce the lenders to make loans at terms that the lenders otherwise would not have funded.

8.   As a further part of the scheme to defraud, CHRISTOPHER CAVOUNIS, the defendant, and others known and unknown, recruited individuals whose names and other identifying

information were provided to the lenders as being the owners
and/or executives of the companies applying for the loans.
CAVOUNIS recruited these straw owners by, among other things,
promising payments in return for the use of the their names and
signatures on loan documents.  The straw owners provided their
identifying information to CAVOUNIS and JAGDESH COOMA, the
defendants, and others.  CAVOUNIS and COOMA subsequently used
that information in causing loan applications to be submitted on
behalf of the recruited straw owners and the empty shell
companies that the straw owners purported to own and/or control.
These loan applications and supporting documentation purported to
accurately represent the personal and financial information of
each straw owner and his/her company to the lenders.  However,
the loan applications and related information fraudulently
portrayed the straw owners' empty shell companies as maintaining
significant income and assets by falsifying personal and
financial information about the straw owners and the applicant
businesses that they purportedly owned and/or controlled.  For
example, the loan applications contained false and misleading
information concerning the straw buyers' employment, income and
assets, among other things, and overstated the straw owners'
assets by millions of dollars.  This information was material to
the lenders in making their lending decisions.

9.    As a further part of the scheme to defraud,
CHRISTOPHER CAVOUNIS, the defendant, and others known and
unknown, bribed an employee of Citibank ("Citibank Banker-1") on
several occasions in order to secure approval of fraudulent
loans.  For example, in or about June 2010, CAVOUNIS paid
Citibank Banker-1 approximately $75,000 in United States currency
in exchange for Citibank Banker-1 successfully securing approval
of a $1,000,000 line of credit to an empty shell company that
existed in name only ("Citibank Applicant-1"); that is, the
company had no existing or legitimate business.  Moreover, the
individual listed in the loan application as the owner of the
company had no involvement with Citibank Applicant-1 and did not
maintain the amounts of income and assets reflected on the false
and fraudulent documents submitted to Citibank in support of the
loan.  Nevertheless, in or about June 2010, with Citibank Banker-
1's assistance, a $1,000,000 line of credit was approved and
funded for Citibank Applicant-1.  Within days of the line of
credit being funded, $800,000 was withdrawn from the funded
account and disbursed by check to another empty shell company,
which was controlled by CAVOUNIS and used solely to facilitate
CAVOUNIS's fraudulent loans and distribution of fraudulent loan
proceeds.

10.    As a further part of the scheme to defraud,
CHRISTOPHER CAVOUNIS, the defendant, employed threats of physical
harm in an attempt to procure loan proceeds.  In or about October

6

2010, after successfully obtaining a total of $2,000,000 in lines
of credit from Citibank for two empty shell companies and paying
Citibank Banker-1 approximately $135,000 in bribes in connection
with those and other lines of credit, CAVOUNIS attempted to
obtain a third line of credit for another empty shell company.
Again, CAVOUNIS offered bribes to Citibank Banker-1 and another
Citibank employee ("Citibank Banker-2") in exchange for securing
approval of the loan.  After CAVOUNIS submitted false and
fraudulent information and documents to Citibank in support of
the loan application, a $450,000 line of credit was approved.
However, Citibank froze funding of the line of credit in or about
October 2010, when, just days after the line of credit became
available, CAVOUNIS and the straw owner of the purported company
that received the line of credit attempted to withdraw the entire
$450,000 available through the loan.  After Citibank refused to
release the funds, CAVOUNIS made several phone calls to Citbank
Banker-1 and Citibank Banker-2 in which CAVOUNIS threatened the
bankers with physical violence unless the loan proceeds became
available to him.

        11.  As a further part of the scheme to defraud,
CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the
defendants, took and attempted to take the illicit loan proceeds
for personal gain.  For example, from in or about October 2009
through in or about March 2010, in connection with two lines of
credit that CAVOUNIS fraudulently procured from (a) Herald

National and (b) New York Commercial, CAVOUNIS received at least $1,007,986 in checks from the funded accounts. In or about November 2010, in connection with two lines of credit that CAVOUNIS and COOMA fraudulently procured from (a) First Republic and (b) Capital One, COOMA received at least $1,212,635 in checks payable to a company that COOMA purported to control. In or about March 2009, in connection with a line of credit that CAVOUNIS, COOMA, and NUCCIO fraudulently procured from TD Bank, NUCCIO received at least $150,000 from a check payable to a company that NUCCIO controlled.

## STATUTORY ALLEGATIONS

12. From at least in or about 2009 up to and including in or about November 2010, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Section 1344 of Title 18, United States Code.

13. It was a part and an object of the conspiracy that CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance

8

Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## OVERT ACTS

14.   In furtherance of the conspiracy and to effect the illegal object thereof, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    In or about June 2010, CAVOUNIS paid Citibank Banker-1 approximately $75,000 in United States currency in exchange for assisting in the approval of a fraudulent loan application that was submitted to a lender in New York, New York.

b.    In or about November 2010, COOMA attempted to cash checks totaling approximately $1,212,635, which were derived from fraudulent loan proceeds paid by a lender located in New York, New York.

c.    In or about March 2009, NUCCIO signed closing documents for a line of credit at TD Bank in Bronx, New York.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Bank Fraud re: $800,000 Line of Credit from Herald National)

The Grand Jury further charges:

15.   The allegations contained in paragraphs 1 through 11 and 14 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

16.   In or about August 2009, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, willfully and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, CAVOUNIS and COOMA participated in a scheme to defraud Herald National by obtaining a line of credit in the amount of approximately $800,000 for a company that had no existing or legitimate business, through the use of false and fraudulent statements and documents.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE
### (Bank Fraud re: $1,000,000 Line of Credit from Citibank)

The Grand Jury further charges:

17.  The allegations contained in paragraphs 1 through 11 and 14 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

18.  In or about May 2010, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, willfully and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, CAVOUNIS and COOMA participated in a scheme to defraud Citibank by obtaining a line of credit in the amount of approximately $1,000,000 for a company that had no existing or legitimate business, through the use of false and fraudulent statements and documents.

(Title 18, United States Code, Sections 1344 and 2.)

11

## COUNT FOUR
**(Bank Fraud re: $500,000 Line of Credit from First Republic)**

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 11 and 14 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

20. In or about October 2010, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, willfully and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, CAVOUNIS and COOMA participated in a scheme to defraud First Republic by obtaining a line of credit of approximately $500,000 for a company that had no existing or legitimate business, through the use of false and fraudulent statements and documents.

(Title 18, United States Code, Sections 1344 and 2.)

12

## COUNT FIVE
### (Bank Fraud re: $750,000 Line of Credit from Capital One)

The Grand Jury further charges:

21.   The allegations contained in paragraphs 1 through 11 and 14 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

22.   In or about November 2010, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, willfully and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, CAVOUNIS and COOMA participated in a scheme to defraud Capital One by obtaining a line of credit of approximately $750,000 for a company that had no existing or legitimate business, through the use of false statements and fraudulent documents.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX
### (Bank Fraud re: $500,000 Line of Credit from TD Bank)

The Grand Jury further charges:

23.   The allegations contained in paragraphs 1 through 11 and 14 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

24.   In or about March 2009, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, willfully and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, CAVOUNIS, COOMA, and NUCCIO participated in a scheme to defraud TD Bank by obtaining a line of credit of approximately $500,000 for a company that had no existing or legitimate business, through the use of false statements and fraudulent documents.

(Title 18, United States Code, Sections 1344 and 2.)

14

## COUNT SEVEN
### (Bank Bribery)

The Grand Jury further charges:

25.   The allegations contained in paragraphs 1 through 11 and 14 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

26.   From at least in or about 2007 up to and including in or about 2009, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS, the defendant, willfully, knowingly, and corruptly gave, offered, and promised things of value to a person, with intent to influence and reward an officer, employee, and agent of a financial institution in connection with the business and transactions of such institution, to wit, CAVOUNIS paid and caused to be paid, and aided and abetted the payment of, approximately $135,000 to Citibank Banker-1 in exchange for Citibank Banker-1 causing Citibank to approve various bank loans for the benefit of CAVOUNIS and others.

(Title 18, United States Code, Sections 215 and 2.)

## COUNT EIGHT
### (Continuing Financial Crimes Enterprise)

The Grand Jury further charges:

27.   The allegations set forth in paragraphs 1 through 11 and 14 above are repeated and realleged as if set forth fully herein.

28.   From at least in or about 2009 up to and including

15

in or about November 2010, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS, the defendant, willfully and knowingly organized, managed, and supervised a continuing financial crimes enterprise, and received $5,000,0000 and more in gross receipts from such enterprise during a 24-month period, to wit, from at least in or about 2009 up to and including in or about November 2010, CAVOUNIS, in concert with at least three other persons, committed a series of violations of, among other laws, Title 18, United States Code, Sections 215 (bank bribery) and 1344 (bank fraud), including but not limited to the violations alleged in Counts Two through Seven of this Indictment, and in so doing, received at least $5,000,000 in gross receipts.

(Title 18, United States Code, Section 225.)

### COUNT NINE
### (Aggravated Identity Theft)

The Grand Jury further charges:

29.   The allegations set forth in paragraphs 1 through 11 and 14 above are repeated and realleged as if set forth fully herein.

30.   From at least in or about August 2009 up to and including in or about July 2010, in the Southern District of New York and elsewhere, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, willfully and knowingly did transfer, possess and use, without lawful authority, a means of identification of

16

another person during and in relation to, among others, the offense charged in Count Two of this Indictment, to wit, the name, date of birth and driver's license of the person in whose name CAVOUNIS sought to obtain lines of credit.

(Title 18, United States Code, Sections 1028A(a)(1) and 2.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

31.   As a result of committing the bank fraud offense alleged in Count One of this Indictment, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the bank fraud offense alleged in Count One of this Indictment, including, but not limited to at least $10,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Indictment.

### Substitute Asset Provision

32.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

17

       c.    has been placed beyond the jurisdiction of the Court;

       d.    has been substantially diminished in value; or

       e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

          (Title 18, United States Code, Section 982;
          Title 21, United States Code, Section 853.)

## FORFEITURE ALLEGATION AS TO COUNT TWO

    33.  As a result of committing the bank fraud offense alleged in Count Two of this Indictment, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the bank fraud offense alleged in Count Two of this Indictment, including, but not limited to at least $800,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count Two of this Indictment.

<u>Substitute Asset Provision</u>

34.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853.)

## FORFEITURE ALLEGATION AS TO COUNT THREE

35.   As a result of committing the bank fraud offense alleged in Count Three of this Indictment, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds

19

obtained, directly or indirectly, as a result of the bank fraud offense alleged in Count Three of this Indictment, including, but not limited to at least $1,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count Three of this Indictment.

<u>Substitute Asset Provision</u>

36.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853.)

20

## FORFEITURE ALLEGATION AS TO COUNT FOUR

37.   As a result of committing the bank fraud offense alleged in Count Four of this Indictment, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the bank fraud offense alleged in Count Four of this Indictment, including, but not limited to at least $500,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count Four of this Indictment.

### Substitute Asset Provision

38.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which

21

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

> (Title 18, United States Code, Section 982; Title 21, United States Code, Section 853.)

## FORFEITURE ALLEGATION AS TO COUNT FIVE

39.   As a result of committing the bank fraud offense alleged in Count Five of this Indictment, CHRISTOPHER CAVOUNIS and JAGDESH COOMA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the bank fraud offense alleged in Count Five of this Indictment, including, but not limited to at least $750,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count Five of this Indictment.

### Substitute Asset Provision

40.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited

22

with, a third person;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

        (Title 18, United States Code, Section 982;
        Title 21, United States Code, Section 853.)

## FORFEITURE ALLEGATION AS TO COUNT SIX

    41.  As a result of committing the bank fraud offense alleged in Count Six of this Indictment, CHRISTOPHER CAVOUNIS, JAGDESH COOMA, and THOMAS NUCCIO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the bank fraud offense alleged in Count Six of this Indictment, including, but not limited to at least $500,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count Six of this Indictment.

### Substitute Asset Provision

42.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853.)

### FORFEITURE ALLEGATION AS TO COUNT SEVEN

43.   As a result of committing the bank bribery offense alleged in Count Seven of this Indictment, CHRISTOPHER CAVOUNIS, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained, directly or

indirectly, as a result of the bribery offense alleged in Count Seven of this Indictment, including, but not limited to at least $2,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count Seven of this Indictment.

<u>Substitute Asset Provision</u>

44.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

       (Title 18, United States Code, Section 982;
       Title 21, United States Code, Section 853.)

FOREPERSON

PREET BHARARA
United States Attorney

26