USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/24/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

CHRISTOPHER CAVOUNIS,

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.

-----------------------------------------------------X

14-CV-4992 (VEC)
11-CR-297 (VEC)

MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Christopher Cavounis moves *pro se*,[1] pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (the "Petition"). On December 22, 2011, Petitioner signed a plea agreement ("Plea Agreement") and pled guilty to charges of conspiracy to commit bank fraud, bank fraud, and bribery. On June 14, 2012, he was sentenced to ninety-seven months' imprisonment, two years of supervised release, and the forfeiture of approximately $7.9 million. He was also ordered to pay $8.2 million in restitution and a $700 mandatory special assessment. Upon careful review of Petitioner's arguments and the record, the Court finds that Petitioner's claims are barred by the waiver provision in the Plea Agreement and lack merit. Accordingly, the Petition is DENIED.

**BACKGROUND**

From approximately 2009 through November 2010, Petitioner managed a sophisticated operation, preparing and submitting false and fraudulent documents on behalf of fictitious shell companies in order to obtain commercial loans and lines of credit from various banks, totaling approximately $10 million. Resp. Mem. at 3; Plea Tr. at 14. Petitioner personally assumed

[1] Although Petitioner commenced this action *pro se*, his reply brief was prepared by counsel. The Court will, for the purposes of this opinion, consider Petitioner to be a *pro se* litigant.

fictitious identities to apply for loans and to dupe lenders into granting him lines of credit; he also paid bribes to bank employees and made threats of violence in attempting to secure loan proceeds. Presentence Investigation Report ("PSR") ¶¶ 29, 32, 33.

On June 17, 2011, Petitioner and two other individuals were indicted for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One); bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two through Six); bank bribery, in violation of 18 U.S.C. § 215 (Count Seven); engaging in a continuing financial crimes enterprise, in violation of 18 U.S.C. § 225 (Count Eight); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)-(2) (Count Nine). Superseding Indictment ¶¶ 12-30.

On December 22, 2011, Petitioner pled guilty before Magistrate Judge Ellis to Counts One through Seven of his indictment, pursuant to a Plea Agreement with the Government. Plea Tr. at 3, 5; Plea Agreement at 1. The Plea Agreement stipulated that Petitioner's offense level under the United States Sentencing Guidelines ("USSG") was 30, including a three-level downward adjustment for acceptance of responsibility. Plea Agreement at 5. The Plea Agreement further stipulated that Petitioner's guidelines range was 97 to 121 months' imprisonment. *Id*. at 6.

Petitioner agreed not to appeal or to collaterally challenge any sentence of imprisonment within or below the stipulated guidelines range, any term of supervised release at or below the statutory minimum, any restitution amount at or below $8.2 million, or any forfeiture amount at or below $8.2 million. *Id*. at 7. At Petitioner's guilty plea allocution, Magistrate Judge Ellis questioned Petitioner and determined that he was pleading guilty voluntarily and that he had thoroughly reviewed the Plea Agreement and understood its contents. Plea Tr. at 5-19. Magistrate Judge Ellis subsequently recommended that Judge Patterson accept Petitioner's guilty

plea, and on January 6, 2012, Judge Patterson did so. Jan. 6, 2012 Order. On June 14, 2012, Judge Patterson sentenced Petitioner to 97 months' imprisonment, a term within the stipulated guidelines range and within the guidelines range as calculated by the Probation Office in the PSR. Prior to sentencing, Judge Patterson asked Petitioner's counsel whether Petitioner had reviewed the PSR, to which one of his three retained lawyers responded in the affirmative. Sentencing Tr. at 2. His lawyers also noted that neither they nor Petitioner had any objections to the contents of the PSR. *Id*.

On July 6, 2012, Petitioner filed a notice of appeal, challenging the validity of the appeal waiver contained in the Plea Agreement. On March 27, 2013, the Second Circuit granted the Government's motion to dismiss the appeal. Petitioner's petition for a writ of certiorari was denied by the Supreme Court. This petition followed.

**DISCUSSION**

Petitioner argues that he did not knowingly and voluntarily agree to the appellate waiver in the Plea Agreement and, thus, at least that section of the Plea Agreement is not enforceable. Pet. Reply Mem. at 3-4. Petitioner also claims that during sentencing the district court violated Federal Rule of Criminal Procedure 32(i)(1)(A) by not independently verifying that he had personally read and reviewed the PSR with counsel. Pet. Mem at 2-4. Petitioner contends that had he reviewed the PSR he would have contested the allegations of violence in the PSR as well as the calculation of the loss amount as a result of his scheme. *Id.* at 5-6. Petitioner also claims that the court erred in not, *sua sponte*, recalculating the loss amount. *Id*. at 7-9. He claims that had the court challenged the loss amount that was stipulated to in the Plea Agreement and contained in the PSR, his guidelines offense level – and presumably also his sentence – would have been lower. *Id.* at 8-9. Petitioner also claims ineffective assistance of counsel, insofar as

his counsel allegedly failed to show him the PSR and to object to the loss amount used in calculating his sentencing guidelines range. *Id.* at 10-16. To the extent Petitioner's claims are not procedurally barred, they are without merit.

**I. Legal Standard**

Courts "have never held *pro se* prisoners to the standards of counseled litigants." *Gonzalez v. Crosby*, 545 U.S. 524, 544 (2005) (citing *Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*)). Accordingly, "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (emphasis in *Triestman*)).

Under 28 U.S.C. § 2255, a petitioner "may move the court which imposed [petitioner's] sentence to vacate, set aside or correct the sentence." Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Brama v. United States*, No. 08-CV-1931(RMB), 2010 WL 1253644, at *2 (S.D.N.Y. Mar. 16, 2010) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

**II. The Waiver Provision**

**A. Petitioner's Appellate Waiver Is Valid and Binding**

A defendant, as part of a plea agreement, may waive his right to appeal or to bring any collateral challenge to his sentence. *See, e.g., United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010). The Second Circuit has held that "[w]aivers of the right to appeal a sentence are presumptively enforceable." *Id.* (citing *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)); *see also United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) ("It is by now

well established that a knowing and voluntary waiver of the right to appeal is generally enforceable."). A waiver is made knowingly "if the defendant fully understood its consequences." *United States v. Moore*, No. 09-CR-881-1(TPG), 2015 WL 3457242, at *3 (S.D.N.Y. May 29, 2015) (citing *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996), *superseded on other grounds as stated in United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013)). Knowing and voluntary appellate waivers in plea agreements "must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *Arevalo*, 628 F.3d at 98 (quoting *United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004)).

A petitioner's right to bring a petition pursuant to 28 U.S.C. § 2255 can also be waived in a plea agreement. *See*, *e.g.*, *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (*per curiam*) (upholding the validity of a clause in petitioner's plea agreement waiving his right to "appeal or attack his conviction under § 2255"); *Fardella v. United States*, No. 11-CR-872(LTS), 2014 WL 3294876, at *2 (S.D.N.Y. July 8, 2014) (holding that petitioner's habeas corpus petition was procedurally barred because of the waiver in petitioner's plea agreement preventing collateral challenges under Section 2255); *Pena v. United States*, 201 F. Supp. 2d 231, 235-36 (S.D.N.Y. 2002) (dismissing petitioner's Section 2255 motion because he "*explicitly* waived his rights under § 2255" in his plea agreement) (emphasis in original). Moreover, Courts have "refused to allow a *habeas* petitioner to use a § 2255 motion to 'sidestep' a plea agreement in which he had waived his right to appeal a sentence falling within or below the stipulated range." *Pena*, 201 F. Supp. 2d at 233-34 (citation omitted). A petitioner "may rebut the presumption of enforceability by showing that 'the waiver was not made knowingly, voluntarily, and competently,' that the sentence was 'imposed based on constitutionally impermissible

factors,' that 'the government breached the plea agreement,' or that 'the sentencing court failed to enunciate any rationale for the defendant's sentence.'" *United States v. Shi Hui Sun*, No. 09-CR-778(KBF), 2013 WL 1947282, at *3 (S.D.N.Y. May 8, 2013) (quoting *Gomez-Perez*, 215 F.3d at 319). Courts, however, "find waivers unenforceable only in very limited situations." *Arevalo*, 628 F.3d at 98.

In this case, Petitioner signed his Plea Agreement, which explicitly stated that Petitioner was waiving his right to appeal and waiving his right to collaterally attack his conviction or sentence pursuant to Section 2255. Plea Agreement at 7. Moreover, Petitioner's responses to Magistrate Judge Ellis' questions during his plea allocution clearly demonstrate that Petitioner, who graduated from high school and attended at least some college, Plea Tr. at 5-6, knowingly and voluntarily waived his right to challenge his sentence:

> THE COURT: Mr. Cavounis, I've been handed up the plea agreement in your case. Have you reviewed this agreement with your attorney?
>
> PETITIONER: Yes, your Honor.
>
> THE COURT: And you signed it at the end?
>
> PETITIONER: Yes, your Honor.
>
> THE COURT: Do you understand that one of the provisions of this plea agreement is a calculation of a stipulated guideline range of 97 to 121 months?
>
> PETITIONER: Yes, your Honor.
>
> THE COURT: Do you understand that you have agreed that you will not file a direct appeal or otherwise litigate any sentence that is within or below that stipulated range of 97 to 121 months?
>
> PETITIONER: Yes, your Honor.

Plea Tr. at 11. The record clearly demonstrates that Petitioner entered into the Plea Agreement knowingly and voluntarily, and that he understood the consequences of the waiver. *Cf. Shi Hui*

*Sun*, 2013 WL 1947282, at *3 ("[Petitioner's] statements at his plea allocution, in combination with the Plea Agreement itself, provide ample basis for the Court to find that his waiver of the right to challenge his sentence was knowing and voluntary."); *Bradley v. United States*, No. 03-CV-9063(HB), 2005 WL 2033382, at *3 (S.D.N.Y. Aug. 24, 2005) (holding petitioner's plea agreement to be knowing and voluntary and thus valid). Moreover, Petitioner "points to no evidence suggesting that the Court failed to enunciate any rationale for his sentence, that the government breached the Plea Agreement, or that the sentence was imposed on the basis of constitutionally impermissible factors." *Shi Hui Sun*, 2013 WL 1947282, at *3. In short, the waiver provision in Petitioner's Plea Agreement is valid.

**B. Petitioner's Claims Are Barred by the Waiver Provision**

Petitioner's claim that the district court did not adhere to Federal Rule of Criminal Procedure 32(i)(1)(A) is barred by the valid waiver provision. In *Arevalo*, the Second Circuit held as a matter of first impression that "[petitioner's] claim of Rule 32 error is included within the scope of his waiver of the right to appeal his sentence and that the waiver precludes [petitioner's] claims on appeal." 628 F.3d at 100. Although in *Arevalo* Petitioner argued that the court erred by not complying with Rule 32(i)(3), this Court finds the same reasoning applies with respect to Rule 32(i)(1)(A). *See, e.g.*, *Ramos v. United States*, No. 06-CV-5815(TPG)(LMS), 2011 WL 7112622, at *10 (S.D.N.Y. Nov. 16, 2011) *report and recommendation adopted by* 2012 WL 273470 (S.D.N.Y. Jan. 27, 2012) (finding that *Arevalo* applies in the context of Rule 32(i)(1)(A)). In essence, while an appeal waiver does "not relieve the District Court of its responsibility to follow the procedural requirements related to the imposition of a sentence, the appeal waiver does preclude [the reviewing court] from correcting the [Rule 32] errors alleged to

have occurred below.'" *United States v. Buissereth*, 638 F.3d 114, 117-18 (2d Cir. 2011). Accordingly, Petitioner's claim of error with respect to Rule 32(i)(1)(A) is barred.

Similarly, Petitioner's claim that the district court improperly failed to make an independent finding of the loss amount for purposes of calculating Petitioner's sentencing guidelines range is also precluded by the Plea Agreement. In challenging this purported error by the district court, Petitioner is in effect challenging the calculated guidelines range and, by extension, the sentence itself. Because Petitioner's challenge that the court erred in not recalculating the loss amount is derivative of his challenge to his sentence, as to which he knowingly and voluntarily waived his right to appeal, Petitioner's claim is barred.

Finally, to the extent Petitioner's claim of ineffective assistance of counsel is merely a challenge to his sentence, it too is barred by the Plea Agreement. Petitioner claims that he received ineffective assistance of counsel because his lawyers failed to review the PSR with him and because they failed to object to a 20-level upward adjustment in his offense level based on the stipulated loss amount in the Plea Agreement. These arguments are just a roundabout way to challenge Petitioner's sentence. *See United States v. Garcia*, 166 F.3d 519, 522 (2d Cir. 1999) ("Despite his effort to dress up his claim as a violation of the Sixth Amendment, defendant in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government.") (quoting *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (*per curiam*) (alterations omitted)); *United States v. Martinez*, No. 09-CR-1022(KMK), 2014 WL 7146846, at *6 (S.D.N.Y. Dec. 12, 2014) ("[A] claim of ineffective assistance that is unrelated to the plea bargaining process does not provide a basis upon which to invalidate a waiver of the right to challenge the conviction by appeal or by a Section 2255 proceeding." (quoting *Abramo v. United*

*States*, No. 12-CV-1803(JSR)(HBP), 2014 WL 1171735, at *10 (S.D.N.Y. Mar. 19, 2014))); *Panah v. United States*, No. 02-CR-147S, 2006 WL 2056728, at *4 (W.D.N.Y. July 21, 2006) ("In the context of a challenge to a sentence, a waiver agreement is fully enforceable even where ineffective assistance of counsel is claimed." (citing *Djelevic*, 161 F.3d at 107)). If the Court "were to allow [this] claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in [the] waiver agreement, the waiver of appeal provision would be rendered meaningless." *Djelevic,* 161 F.3d at 107. Accordingly, Petitioner's ineffective assistance of counsel claim is also precluded from review.

Even construing Petitioner's ineffective assistance of counsel claim liberally as one alleging that he was denied the opportunity to object to portions of the PSR (such that he would have been entitled to a *Fatico* hearing),[2] Petitioner's claims are still barred by the waiver agreement. An "alleged failure to seek a *Fatico* hearing is not an ineffective assistance claim that relates to the validity of [petitioner's] plea or the waiver itself." *Moore v. United States*, Nos. 00-CV-4560, 2001 WL 253432, at *16 (S.D.N.Y. Mar. 15, 2001); *see also Martinez*, 2014 WL 7146846, at *7 ("Similarly waived is Petitioner's claim that counsel erred by not pursuing a *Fatico* hearing. . . . [T]his claim of ineffective assistance does not involve counsel's advice in connection with the Sentencing Stipulation."). Accordingly, there is no argument in Cavounis' Petition that is immune from the appellate waiver that he knowingly and voluntarily signed.

## III. Even if Petitioner's Claims Were Not Barred, They Are Without Merit

Although this Court finds that Petitioner's Section 2255 motion and ineffective assistance of counsel claims are barred by the waiver provisions in his Plea Agreement, even if they were not, the Petition would be dismissed because his claims have no merit.

---

[2] "A '*Fatico*' hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence." *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir. 1991) (citing *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979)) (internal quotations omitted).

**A. The Court Did Not Violate Rule 32(i)(1)(A)**

Rule 32(i)(1)(A) provides that "[a]t sentencing, the court: must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Petitioner's interpretation of the requirements of the Rule is somewhat contradictory. In his brief he argues that any lenient reading of the Rule established by the Second Circuit is only applicable to prior iterations of Rule 32(i)(1)(A) and should not be applied in this case. Pet. Mem. at 4.[3] In his reply brief, however, Petitioner concedes that "the district court may comply with Rule 32(a)(1)(A) by 'drawing reasonable inferences about whether the defendant has had an opportunity to review the presentence investigation report and to discuss it with counsel.'" Pet. Reply Mem. at 3 (quoting *United States v. Cortez*, 841 F.2d 456, 460-61 (2d Cir. 1988)). In fact, while the Second Circuit "agree[s] that direct questioning as to all relevant aspects of Rule 32(a) is indeed the better practice, it is not required by the language of Rule 32(a)(1)(A)." *Cortez*, 841 F.2d at 460 (internal quotations and citation omitted); *see also Tineo v. United States*, 977 F. Supp. 245, 261 (S.D.N.Y. 1996).

Despite the uncertainty as to Petitioner's view of the requirements of Rule 32(i)(1)(A), his argument that the district court did not obey the rule is belied by the record. At Petitioner's sentencing, the following exchange took place:

> THE COURT: Has defense counsel and Mr. Cavounis reviewed the presentence report?
>
> PETITIONER'S COUNSEL: Yes, your Honor.

---

[3] The Court recognizes that the language of the Rule has been modified over time and that it has moved from 32(a)(1)(A) to 32(i)(1)(A). Petitioner has failed to present authority, and the Court has found none, suggesting that this modification has altered any interpretation of the Rule's requirements – courts have continued to interpret the Rule as not requiring a court to directly ask a defendant if he or she has reviewed the PSR. *See, e.g.*, *United States v. Romero*, 491 F.3d 1173, 1179 (10th Cir. 2007) ("We have rejected a reading of [Rule 32(i)(1)(A)] that would require the district court to . . . directly question[] the defendant."); *see also Ramos*, 2011 WL 7112622, at *10 (dismissing petitioner's claim of Rule 32(i)(1)(A) error pursuant to a waiver provision and noting that the court found no authority within the Second Circuit suggesting strict compliance with Rule 32(i)(1)(A) is required).

> THE COURT: Are there any changes that you feel should be required in the final report?
>
> PETITIONER'S COUNSEL: No, your Honor.
>
> THE COURT: And that goes for Mr. Cavounis also?
>
> PETITIONER'S COUNSEL: Yes, your Honor.

Sentencing Tr. at 2. Although the court asked Petitioner's counsel and not Petitioner himself whether he had reviewed the PSR, the record clearly demonstrates that the district court verified "that the defendant and the defendant's attorney have read and discussed the presentence report." Fed. R. Crim. P. 32(i)(1)(A). *See, e.g.*, *United States v. Beyer*, 166 F.3d 1201 (2d Cir. Dec. 23, 1998) (table) (holding Rule 32 not violated when defense counsel indicated that he had reviewed the PSR with the defendant); *Tineo*, 977 F. Supp. at 261 ("At the sentencing hearing, the Court asked Petitioner's counsel whether he had discussed the probation report with his client, and Petitioner's attorney answered in the affirmative. The Court reasonably inferred from counsel's response that Petitioner had reviewed and discussed the contents of the probation report with his attorney.") (internal citations omitted). Here too, based on counsel's response to the Court's questions, it is reasonable to infer that Petitioner reviewed and discussed the PSR with his attorney. Accordingly, Petitioner's Rule 32 claim is without merit.

**B. The District Court Did Not Err by Not Recalculating the Loss Amount**

"[A] factual stipulation in a plea agreement is a valid basis for a factual finding relevant to sentencing only when the 'record clearly demonstrates that the stipulation was knowing (in the sense that the record clearly demonstrates that the defendant fully understood the potential consequences of his stipulation) and voluntary.'" *Granik*, 386 F.3d at 413 (quoting *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004)) (alteration omitted). The "knowing and voluntary" inquiry is satisfied where "the plea agreement makes a stipulation clearly and explicitly" and

"the defendant signs the agreement and allocutes to understanding the consequent loss of the right to put the government to its proof." *Id.* "It will ordinarily not be necessary for the court taking the plea to question a defendant specifically about each factual stipulation." *Id.* Here, Petitioner freely signed the Plea Agreement, which explicitly stipulated to the $8.2 million loss amount that was used to calculate his guidelines range. Plea Agreement at 3. Petitioner also allocuted that he had signed the Plea Agreement freely and that he understood that the Government had calculated the amount due in restitution to be $8.2 million. Plea Tr. at 11-12. Further, Petitioner's counsel testified at his sentencing that Petitioner had read and had no objections to the PSR, which also explicitly discussed the $8.2 million loss. Sentencing Tr. at 2; PSR ¶¶ 19, 52. Thus, Cavounis' stipulation, contained in the Plea Agreement, to a loss amount of $8.2 million was a valid basis on which the district court could calculate the applicable guidelines range.

Petitioner argues, quoting USSG § 6B1.4, that "the court is not bound by the stipulation [of facts], but may with the aid of the presentence report, determine the facts relevant to sentencing." Pet. Mem. at 7. He also argues that the loss amount as a result of his criminal activity was much lower, approximately $3.5 million. *Id*. at 9; Affidavit of Christopher Cavounis ¶ 11. Cavounis is correct that the district court was not bound by the $8.2 million loss amount figure, but the "facts admitted in a plea agreement can, and usually will, be accepted by the sentencing court as true." *Granik*, 386 F.3d at 413; *see also United States v. Monsalve*, 388 F.3d 71, 73 (2d Cir. 2004) (*per curiam*) ("Defendant's denial of knowing drug . . . quantity during her plea colloquy does not negate the admissions Defendant made in her plea. . . . [S]entencing based on such conflicting statements has long been held constitutional, as a criminal defendant may enter a guilty plea and receive a sentence even while maintaining her

innocence.”). In this case, there was no reason for the court not to base its guidelines calculation on a knowingly and voluntarily stipulated loss amount, which was then incorporated into the unobjected to PSR and relied upon by the court. Accordingly, the Court finds this claim meritless.[4]

**C. Petitioner’s Counsel Were Not Ineffective**

A claim of ineffective assistance of counsel will only be granted if a petitioner can show that his counsel’s performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by his counsel’s deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). This two-prong test is a difficult one to satisfy. *See Shi Hui Sun*, 2013 WL 1947282, at *4 (“[Ineffective assistance of counsel] is a difficult showing to make, as courts ‘must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case.’” (quoting *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990)) (alterations omitted). Moreover, the second prong of the *Strickland* inquiry will not be satisfied unless a petitioner can affirmatively prove prejudice, by showing “that there is a ‘reasonable probability’ that, but for the deficiency, ‘the result of the proceeding would have been different.’” *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 690).

The elements of the *Strickland* test are not satisfied here. Neither Petitioner’s counsel’s purported failure to review the PSR with him nor the purported failure to object to the $8.2 million loss amount used for calculating Petitioner’s sentence amounts to ineffective assistance

---

4 Petitioner also claims that the Government’s failure to produce individual financial statements to prove the loss amount to which he stipulated deprived him of his confrontation clause rights. Pet. Mem. at 16. It is unclear, however, how the failure to recalculate the loss amount stipulated to by both parties deprived Petitioner of his confrontation clause rights.

of counsel. The allegation that Petitioner's counsel failed to review the PSR with him is clearly contradicted by the record and is without merit. *See, e.g.*, *Slevin v. United States*, No. 98-CV-904(PKL), 1999 WL 549010, at *9 (S.D.N.Y. July 28, 1999) (dismissing petitioner's ineffective assistance of counsel claim because his "claim is clearly belied by the record. . . . At petitioner's sentencing hearing . . . the Court asked whether he had adequate time to review the PSR and discuss it with counsel. Petitioner responded that he had reviewed the report with counsel."). Further, counsel's alleged failure to object to the $8.2 million loss amount and the ensuing 20-level upward adjustment in Petitioner's USSG offense level was not unreasonable. Petitioner freely signed the Plea Agreement, knowingly and voluntarily stipulating to that loss amount, and he allocuted that he understood the consequences of the Plea Agreement. Thus, it was entirely reasonable for Petitioner's counsel not to object to the loss amount.

But even if Petitioner did not review the PSR and Petitioner's counsel's failure to object to the $8.2 million loss amount was in fact unreasonable, Petitioner has failed to meet the heavy burden of proving prejudice under *Strickland*. *See United States v. Cohen*, 427 F.3d 164, 171 (2d Cir. 2005). To prevail, Petitioner would have to show a "reasonable probability" that, but for his counsel's failure to object, the district court would have reached a different loss amount. *Strickland*, 466 U.S. at 694. There is no reason to believe that the district court would not have relied on the loss amount to which Petitioner had already agreed – his counsel's hypothetical protestations notwithstanding. Accordingly, Petitioner cannot establish any prejudice resulting from his counsel's failure to challenge the loss amount on which the district court based his sentence. In sum, "[t]he Court finds that whether Petitioner's claims are considered individually or cumulatively, *see Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001), Petitioner has not

established that . . . his . . . attorney[s] provided ineffective assistance of counsel." *Adorno v. United States*, No. 98-CV-3366(SJ), 2005 WL 946619, at *6 (E.D.N.Y. Apr. 18, 2005).

## CONCLUSION

For the reasons set forth above, the Petition is denied. The Court declines to issue a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is respectfully directed to terminate the case.

**SO ORDERED.**

**Date: July** 24**, 2015**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**